## Kolb v. Dubois.

(Decided October 18, 1912.)

### Appeal from McCracken Circuit Court.

1. Land—Sale of—Consideration—Compromise—Mistake.—It being apparent that the transactions between appellant and appellee ending in a sale and conveyance by the former to the latter of his interest in several parcels of real estate, owned by them jointly, resulted in a compromise of the disputed matters entering into the consideration to be paid for such interest; and that the amount paid was the consideration arrived at by the compromise, neither party will be heard to complain that there was a mistake in the adjustment of the matters in dispute between them settled by the compromise.

2. Court of Equity Will Not Disturb Compromise.—A court of equity will not disturb a settlement resulting from a compromise, where, as in this case, it is made to appear, that the parties were upon equal terms; each cognizant of his rights and on the alert to protect them.

HENDRICK & CRICE for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment rendered in appellee's favor against appellant for $562.50, with interest from September 8, 1906, in an action in equity, brought by appellee to correct an alleged mistake made by him in overpaying appellant for his undivided interest in certain real estate owned by them jointly; which interest appellant conveyed him by proper deed.

Without attempting to go into the details of a partnership in the drug business between appellant and ap-

pellee or giving the history of the various transactions, resulting in their joint acquisition of the several parcels of real estate involved in the consideration of this case, it is sufficient to say that after continuing in business in the city of Paducah until September 8, 1906, the partnership was dissolved, and appellant, upon terms which had been agreed upon May 19, 1906, and again August 30, 1906, sold to appellee his undivided one-half interest in the firm's drug business; and also sold and, by deed, conveyed him his undivided one-half interest in all of the real estate which he owned jointly with appellee. The real estate consisted of a lot and storehouse situated on Broadway, in the city of Paducah and a lot in another part of the same city containing a building known as the Empire Flats; and a vacant lot in Waco, Texas.

It is alleged in the petition and provided in the previous agreements of May 19 and August 30, 1906, that appellee was to pay appellant for his interest in the Broadway property, $10,800 and for the Empire Flats $12,000. It is, however, contended by appellant and alleged in his answer, that the agreements of May 19, and August 30, 1906, as understood by the parties, compelled appellee to purchase of him his undivided one-half interest in the Paducah property, referred to, at the cost of such interest to appellant; which included, in addition to the purchase prices appellant paid therefor when he bought same, such sums as he expended in improving the property. The answer further alleges in substance that the writings of May 19 and August 30, 1906, evidencing the agreement, by fraud or mistake on the part of appellee or the draftsman, failed to provide that appellee should pay appellant for his interest in the Paducah real estate, in addition to what he paid to acquire it, such other sums as he may have expended in making necessary improvements on the same; and by like fraud or mistake erroneously restricted the prices to be paid appellant to $10,800 for the Broadway property, and $12,000 for the Empire Flats; these sums being the original cost to appellee of his interest in these parcels of real estate.

The price of the lot in Waco, Texas, although a part of the real estate appellee obligated himself to buy, was not fixed by the previous agreements, and it is appellee's contention that on September 8, 1906, and immediately

before appellant executed the deed conveying to appellee his interest in the several pieces of property referred to, they agreed that appellee should pay appellant for his undivided interest in the Waco lot, $62.50; with the understanding, however, that if appellee succeeded in selling the lot at a price that would realize more than $62.50 for appellant's interest therein, he would pay appellant his part of the excess.

It is further contended by appellee that in putting on paper the sum due appellant for his interest in each of the lots in question, for the purpose of ascertaining the total amount to be paid, he, by mistake, put down the price of appellant's interest in the Waco lot at $625, instead of $62.50, the agreed amount; that because of his mistake in so doing he paid appellant for his interest in all of the real estate $23,425, when the correct amount due him therefor was only $22,862.50. The $562.50 alleged to have been thus overpaid appellant, was the amount which appellee recovered by the judgment appealed from.

Appellant's answer denies the mistake pleaded by appellee, and avers, if there was such a mistake, he was not aware of it at the time, and was not informed of it by appellee, until three years later; and his deposition, as well as that of appellee, sustains this contention.

It is apparent from appellant's deposition, that of George C. Kolb, and appellee's as well, that appellant was not shown the paper containing the figures made by appellee; and it is insisted for appellant that the mistake claimed to have been made by appellee was not material, and that it in no way affected the contract of sale. In other words, it is alleged in the answer, that while it is true appellant agreed to sell appellee his interest in the Paducah real estate at what it had cost him, the price at which appellee placed it in making his figures did not represent the entire cost of such interest to appellant, as in addition thereto, he and appellee, after they acquired the real estate, expended in improving the Broadway property $500, one-half of which, $250, was paid by appellant; that appellant also paid $300 as his half of the cost of ground in the rear of the lot for use as an alley, and $100, one-half the cost of paving the alley; that appellant also expended $300 in paying half the cost of improvements made upon the Empire Flats property.

If correct as to his estimate on these items of expenditures, and his right to be repaid them, appellant should have been paid $11,450 for his interest in the Broadway property instead of $10,800 as received by him, and $12,300 for his interest in the Empire Flats, instead of $12,000, as received by him. Upon this basis the gross amount to which he was entitled for his one-half interest in the Paducah real estate was $23,750, instead of the $22,800 appellee paid him, and if to the $23,750 is added $62.50 for appellant's interest in the Waco lot, it would swell the total amount which appellant should have received to $23,812.50. Therefore, according to these figures, instead of overpaying appellant $562.50, appellee lacked $387.50 of paying him the full amount to which he was entitled for his interest in all of the real estate.

Appellee's contention as to the mistake made by him in the matter of the price paid for appellant's interest in the Waco lot, is supported by his testimony and, apparently so, by the paper upon which he claims to have entered his figures, but by no other witness. He does not however, contradict the testimony of appellant and George C. Kolb that the former was never shown the paper containing the figures and that he was not at the time of conveying his interest in the joint property, or for as much as three years thereafter, advised of the alleged mistake. Obviously the mistake was not mutual, and its materiality is doubtful. It was unknown to appellant, was made by appellee alone, and resulted, according to his own showing, solely from his negligence. He is not, therefore, in a position to ask its correction at the hands of a court of equity. In order to authorize a court of equity to correct a mistake in a contract, it must be made to appear that it was material. and either, that it was mutual, that is, shared in by both parties; or if made by one of the parties, that the mistake was not caused by his negligence but by the negligence or fraud of the party benefited by the mistake. Duff & Oney v. Rose, &c., 149 Ky., 482; Hobson's Exor. v. Commonwealth, 70 Ky., 649; McKee v. Hoover, 1 Mon., 34; Western German Savings Bank v. Farmers & Drovers Bank, 73 Ky., 674; Hill v. Petit, 23 R., 2001; Coleman v. Illinois Insurance Co., 26 R., 900; Bevins v. J. A. Coates & Son, 29 R., 978; East Jellico Coal Co. v. Carter, 30 R., 174; Crabtree v. Sisk, 30 R., 572.

On the other hand, while the weight of the evidence sustains appellant's estimate of moneys contributed by him in defraying his one-half of the cost of improving the Paducah real estate, we are not satisfied that it supports his claim of the undertaking on the part of appellee to pay for his interest in the Paducah property what it had cost appellant, plus what he contributed to improve it. The testimony of the two Kolbs, on this question, is contradicted by the written agreements executed by the parties before the sale of appellant's interest in the property to appellee, was consummated, and the averments of the former's answer as to the omission, by fraud or mistake, of the undertaking from the writing is not, as we think, fairly borne out by the evidence.

It is, however, amply shown by the evidence that at the time of the consummation of the sale to appellee of appellant's interest in the joint property, September 8, 1906, and for several months prior thereto, appellant was setting up claim to the repayment to him of what he had contributed toward the improvement of the Paducah property, in addition to the consideration he had paid for the interest he acquired in the property. According to the testimony this claim was pressed by him with great force on September 8, 1906, and immediately before the execution of the deed conveying his interest in the property to appellee; and the discussion between them about it resulted in his proposing to accept of appellee, $24,000 in compromise and settlement of his claim for money expended in improving the property, and the original cost to him of his interest therein. It further appears from the evidence that appellee, following this proposition, from appellant, did some writing or figuring on a piece of paper which he held in his hand and then told appellant he would give him in satisfaction of his claims, $23,425, the amount admitted by the parties to have been actually paid. This offer was immediately accepted by the appellant and the transaction was closed with the execution of the deed.

Aside from the question of mistake, which, as previously stated, appellee is estopped to rely on, the case, in the light of all the facts presented by the evidence, is one in which there was a compromise by the parties about the matters in dispute between them. When it was made the parties were upon equal terms, each being cognizant of his rights and on the alert to protect them.

Being concluded by the settlement thus made, appellant will not be heard to say that appellee did not pay him enough for his interest in the joint property; nor can appellee complain that he overpaid appellant for his interest. Neither is in an attitude to invoke the aid of a court of equity.

Wherefore, the judgment is reversed and cause remanded to the lower court, with directions to dismiss the petition.